CRAIG B. FRIEDBERG, ESQ.
Nevada Bar No. 004606
4760 South Pecos Road, Suite 103
Las Vegas, Nevada 89121
Phone: (702) 435-7968;
Fax:   1-702-825-8071
Email: attcbf@cox.net

ANTHONY I. PARONICH, ESQ. (SBN 678437)[1]
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile:  (508) 318-8100
Email: anthony@paronichlaw.com
*Subject to Pro Hac Vice*

*Attorneys for Plaintiff Blake Cooley and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| BLAKE COOLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FREEDOM FOREVER LLC, a Delaware corporation, and JOHN DOE CORPORATION D/B/A UNIVERSAL ENERGY<br><br>Defendants. | NO. 2:19-cv-00562<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Plaintiff Blake Cooley (hereinafter "Plaintiff"), by his undersigned counsel, files this class action complaint against Freedom Forever LLC ("Freedom Forever"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or

---

[1] Massachusetts counsel will comply with LR IA 11-2 and move for *pro hac vice* admission within 45 days.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 1

other related entities ("Freedom Forever"), as well as John Doe Corporation d/b/a Universal Energy ("Universal Energy"), and alleges as follows:

## I. INTRODUCTION

1. <u>Nature of Action</u>.  Plaintiff Blake Cooley ("Plaintiff"), individually and as class representative for all others similarly situated, brings this action against Freedom Forever for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). Freedom Forever hired Universal Energy to originate new energy leads for their company. Universal Energy, with the knowledge and acceptance of Freedom Forever, generated those leads with automated telemarketing calls.

## II. PARTIES

2. Plaintiff Blake Cooley is a resident of Nevada and this District.

3. Defendant Freedom Forever LLC has its principal place of business in Temecula, CA with a registered agent of Greg Albright, 43445 Business Park Dr., Suite 104 in Temecula, CA.

4. Defendant John Doe Corporation d/b/a Universal Energy is a telemarketing company hired by Freedom Forever to make telemarketing calls to generate new customers. Upon information and belief, Universal Energy is located in Arizona.

## III. JURISDICTION AND VENUE

5. <u>Subject Matter Jurisdiction</u>.  This Court has subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227.

6. <u>Personal Jurisdiction</u>.  This Court has personal jurisdiction over Freedom Forever because it has submitted to Nevada jurisdiction by doing business in this state, and a substantial part of the wrongful acts alleged in this Complaint were committed into Nevada. Similarly, the Court has personal jurisdiction over Universal Energy because they performed the telemarketing activities that are the subject of the Complaint in this District.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 2

7. <u>Venue</u>.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this District. Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, whereas the telemarketing calls that are the subject of this Complaint were made into this District.

**IV.    THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 47 U.S.C. § 227**

8.  In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

9.  The TCPA makes it unlawful to initiate any telephone call using an automatic telephone dialing system to any cellular telephone line. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

10. In 2013, the FCC required prior express written consent for all autodialed telemarketing calls ("robocalls"). Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

12. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

13. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

15. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 4

16. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

17. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

18. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

## V.   FACTUAL ALLEGATIONS

**A.   Factual Allegations Regarding Freedom Forever**

19. Freedom Forever is a solar energy provider.

20. Freedom Forever's contact with the general public, however, is limited.

21. Instead, Freedom Forever relies on third parties it calls "dealers" to sell their services.

22. One of Freedom Forever' strategies for dealer marketing involves the use of autodialers to solicit business.

23. In order to generate new sales for their business, Freedom Forever hired Universal Energy.

24. Universal Energy, with the knowledge of Freedom Forever, attempted to engage new clients by contacting them with autodialed telemarketing calls.

25. Recipients of these calls, including Plaintiff, did not consent to receive such telephone calls.

26. Instead they are "cold calls", and utilize an autodialer because they are transmitted *en masse*.

27. Unfortunately, this system, while efficient for Freedom Forever, comes at the expense of the call recipients' privacy, and is exactly the kind of telemarketing that the TCPA was passed to prevent.

**B.     Factual Allegations Regarding Plaintiff**

28. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

29. Mr. Cooley's telephone number, 714-330-XXXX, is registered to a cellular telephone service.

30. Mr. Cooley has also placed this telephone number on the National Do Not Call Registry.

31. On March 1, 2019, the Plaintiff received a call from Universal Energy.

32. There was a distinct click and a pause when the Plaintiff answered the phone, indicating the call was made by an ATDS.

33. Universal Energy was calling from (702) 832-1950.

34. Further indication that the call was made by an ATDS is the fact that this number uses a Las Vegas area code even though the calling party identified itself as being in Arizona.

35. In other words, Universal Energy was using a computer to dial the calls and manipulate the Caller ID to hide their identity.

36. Unfortunately, Plaintiff's experience with this number is not unique, as many others have lodged similar complaints after having received telemarketing calls. *See* https://800notes.com/Phone.aspx/1-702-832-1950 ("Allen. Nobody answered then I picked

1  up. Have received calls from this number before with the same results. Auto dialers."); *See*
2  https://www.whitepages.com/phone/1-702-832-1950 (30 spam reports). (Last Visited Mach 21,
3  2019).

4        37. When the call finally connected with a live human, Universal Energy promoted
5  energy services, such as those Freedom offers.

6        38. In fact, to ensure he learned the identity of the caller, Mr. Cooley received an e-mail
7  from Universal Energy, in which an "Allison Olson" stated "I believe it would be Freedom
8  Forever that would be coming to your home".

9        39. Indeed, confirming that it was Freedom Forever services being promoted, Mr. Cooley
10 received a phone call from Enrique Bou, a Freedom Forever employee.

11       40. Plaintiff did not provide his prior express written consent to receive autodialed
12 telemarketing calls on his telephone from, or on behalf of, Freedom Forever.

13       41. Plaintiff's privacy has been violated by the above-described calls from, or on behalf
14 of, Freedom Forever, and they constitute a nuisance as they are annoying and harassing.

15       42. Freedom Forever is responsible for making the above-described calls.

16       43. Plaintiff and all members of the Class, defined below, have been harmed by the acts
17 of Freedom Forever because their privacy has been violated, they were subjected to annoying
18 and harassing calls that constitute a nuisance, and they were invasive of their privacy. The calls
19 also occupied Plaintiff's telephone line from legitimate communication.

20 **C.**      **Freedom Forever's Liability for the Conduct of Universal Energy.**

21       44. Freedom Forever is a "person," as defined by 47 U.S.C. § 153(39).

22       45. The FCC has explained that its "rules generally establish that the party on whose
23 behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules &*
24 *Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order,
25 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

26       46. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a
27 telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 7

"on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

47. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Freedom Forever may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

48. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

49. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

50. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer

> systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

51. Freedom Forever is legally responsible for ensuring that Universal Energy complied with the TCPA, even if Freedom Forever itself did not itself make the calls.

52. Freedom Forever knowingly and actively accepted business that originated through the illegal telemarketing calls from Universal Energy.

53. By hiring a company to make calls on its behalf, Freedom Forever "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

54. Similarly, by accepting these contacts, Universal Energy "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Freedom Forever, as described in the Restatement (Third) of Agency. As such, Universal Energy is an agent of Freedom Forever.

55. Moreover, Freedom Forever maintained interim control over Universal Energy actions.

56. For example, Freedom Forever had absolute control over whether, and under what circumstances, it could issue a quote to a prospective customer or take over their energy needs.

57. Freedom Forever is also liable because it allows dealers like Universal Energy password protected access to its website that allows them to log sales and access proprietary information.

## VI. CLASS ACTION ALLEGATIONS

58. <u>Class Definition</u>. Pursuant to FRCP 23(b)(2) and (b)(3), Plaintiff brings this case as a class action on behalf of the national Class defined as follows:

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 9

> All persons to whom: (a) Freedom Forever and/or a third party acting on Freedom Forever's behalf, made one or more non-emergency telephone calls; (b) using an automatic telephone dialing system; (c) to their cellular telephone number; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

Hereinafter referred to as the "Class"

59. <u>Numerosity</u>. The Class is so numerous that joinder of all members is impracticable. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

60. <u>Commonality</u>. There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

   a. Whether Freedom Forever and/or its affiliates, agents, and/or other persons or entities acting on Freedom Forever's behalf violated 47 U.S.C. § 227 by making any call, except for emergency purposes, using an automatic telephone dialing system to a cellular telephone or phone for which the call recipient is charged for the service;

   b. Whether Freedom Forever and/or its affiliates, agents, and/or other persons or entities acting on Freedom Forever's behalf violated 47 U.S.C. § 227 by making telemarketing calls to a residential telephone number that has been on the National Do Not Call Registry for more than 31 days prior to the first call;

   c. Whether Freedom Forever and/or its affiliates, agents, and/or other persons or entities acting on Freedom Forever's behalf obtained prior express written consent prior to making the calls at issue;

   d. Whether Freedom Forever and/or its affiliates, agents, and/or other persons or entities acting on Freedom Forever's behalf should be enjoined from violating the TCPA in the future.

61. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Freedom Forever and Universal Energy and are based on the same legal and remedial theories.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 10

62. <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and TCPA class actions.  Plaintiff and its counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.  Neither Plaintiff nor its counsel has interests that are contrary to or that conflict with those of the proposed Class.

63. <u>Predominance</u>.  The Defendants have engaged in a common course of conduct toward Plaintiff and members of the Class.  The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

64. <u>Superiority</u>.  A class action is the superior method for the fair and efficient adjudication of this controversy.  Classwide relief is essential to compel the Defendants to comply with the TCPA.  The interest of individual members of the Class in individually controlling the prosecution of separate claims against the Defendants are small because the damages in an individual action for violation of the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

65. <u>Injunctive and Declaratory Relief is Appropriate</u>.  The Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.

///

///

///

## VII.   FIRST CLAIM FOR RELIEF
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227)

66. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

67. The foregoing acts and omissions of Freedom Forever and/or its affiliates, agents, and/or other persons or entities acting on Freedom Forever's behalf constitute numerous and multiple violations of the TCPA, by making a call, except for emergency purposes, using an automatic telephone dialing system to a cellular telephone.

68. As a result of Freedom Forever's and/or its affiliates, agents, and/or other persons or entities acting on Freedom Forever's behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made or up to $1,500 for each telemarketing call made deemed to be a "willful or knowing" violation.

69. Plaintiff and members of the Class is also entitled to and do seek injunctive relief prohibiting Freedom Forever from using third parties to make automated outbound telemarketing calls, other than for emergency purposes.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all members of the Class, prays for judgment against Freedom Forever as follows:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Freedom Forever from using third parties to make automated outbound telemarketing calls, other than for emergency purposes.

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. An award to Plaintiff and the Class of attorneys' fees and costs, as allowed by law and/or equity;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and

I. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## IX.  DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 3rd day of April 2019.

By: /s/ *Anthony I. Paronich*
Anthony I. Paronich
-and-
/s/ *Craig B. Friedberg*
Craig B. Friedberg
*Attorneys for Plaintiff Blake Cooley and the Proposed Class*

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 13